

**U.S. Department of Justice**

Civil Division, Appellate Staff
950 Pennsylvania Ave. NW
Washington, DC 20530

Tel: (202) 514-7823

December 13, 2024

VIA CM/ECF

David J. Smith
Clerk of the Court
U.S. Court of Appeals for the Eleventh Circuit
56 Forsyth St., NW
Atlanta, GA 30303

RE:   *Coin Center, Inc. v. Secretary, U.S. Dep't of Treasury*,
      No. 23-13698 (11th Cir.)

Dear Mr. Smith:

We respectfully submit this letter brief response to plaintiffs' notice of supplemental authority regarding the Fifth Circuit's decision in *Van Loon v. U.S. Department of Treasury* (No. 23-50669), as directed by the Court's order of December 2, 2024.

1. Plaintiffs in this case have focused on issues that are distinct from the ones addressed by the Fifth Circuit. IEEPA allows blocking of "any property" in which any foreigner has "any interest." 50 U.S.C. § 1702(a)(1)(B). As relevant here, the *Van Loon* plaintiffs contended (1) that certain "immutable" smart contracts are not "property," and (2) that Tornado Cash has no "interest" in such contracts. Slip Op. 16-17. The Fifth Circuit limited its analysis to the first argument, holding that the immutable smart contracts are not "property," and are neither "contracts" nor "services," as those terms are used in OFAC's regulatory definition of "property." Slip Op. 20-33. The court expressly declined to reach the second argument. Slip Op. 32 n.76, 33.

Plaintiffs here advanced the second argument—that there is no "interest" in the immutable smart contracts because an "interest" must be legally enforceable. *See, e.g.*, Opening Br. 26, 27, 36-38; *see also* Br. for Appellants, *Van Loon*, Dkt. No. 23, at 48-56 (advancing similar argument). That argument is mistaken for the reasons discussed in our brief and the district court's opinion.

On the first "property" issue, it is undisputed that "property" includes "services of any nature whatsoever." 31 C.F.R. §§ 510.323, 578.314; *see* Gov't Br. 26-27. The district court repeatedly emphasized that the relevant "property" in which Tornado Cash had an interest was the Tornado Cash "service as a whole," of which the immutable smart contracts form an integral part. *See* Doc. 74, at 14, 15, 15-16. Plaintiffs have devoted just one sentence of their reply brief to arguing that Tornado Cash does not provide a "service" that qualifies as "property," *see* Reply 14 (contending that "services" must involve "labor, which no foreigner does in these transactions"), and did not repeat the argument that the smart contracts are categorically incapable of constituting property, *see* Gov't Br. 30 & n.3.

2. In any event, the Fifth Circuit's "property" analysis is mistaken. Tornado Cash provides cryptocurrency mixing services, allowing users to obfuscate the senders and recipients of digital currency transactions. A "service" is the "performance of some useful act or series of acts for the benefit of another, usu[ally] for a fee." *Service*, Black's Law Dictionary (11th ed. 2019); *see Service*, Webster's New Int'l Dictionary 2288 (2d ed. 1968) ("Any result of useful labor which does not produce a tangible commodity."). Just as a bank may use software to provide online banking services, Tornado Cash provides its services through smart contract software it developed. And the "immutable" smart contracts Tornado Cash created are central to that service: the rest of the service cannot function without them, and even unpaid uses of those contracts are critical to the service's efficacy. *See, e.g.*, Doc. 68-1 at 51-53; Gov't Br. 9-11.

The Fifth Circuit recognized that cryptocurrency mixing services are in fact services. *See, e.g.*, Op. 32 (noting that the smart contracts are "used in providing a service of pooling and mixing" cryptocurrency); *id.* (discussing "services provided by the immutable smart contracts"). But the court distinguished between a "service" and "a tool that *is used in performing a service*," noting that the smart contracts "begin[] working only when prompted to do so by a deposit or entry of a key for withdrawal." Op. 31-32. And the Fifth Circuit regarded as "[m]ore important[]" that just as a "client may own the right to legal services performed by a lawyer" but does not "own[] . . . the lawyer," Tornado Cash "does not own the services provided by the immutable smart contracts." Op. 32.

That analysis rests on a false dichotomy between the smart contracts themselves and the mixing service Tornado Cash provides through those contracts. Tornado Cash is *providing* the cryptocurrency mixing service through its interconnected smart contracts, both mutable and immutable. It is not like a client who owns rights to legal services; it is more like a lawyer providing legal services. Services provided by a sanctioned lawyer are not immune from sanctions under

2

IEEPA, regardless of what tools the lawyer uses to provide them. A bank provides banking services whether a teller processes a transaction manually at a customer's direction or the customer "prompts" the bank's online banking software to perform the same transaction. Cryptocurrency mixing services are no less services because they are performed by software Tornado Cash wrote and designed for that very purpose rather than requiring requests of a Tornado Cash "teller." And one way to block use of the service is to block transactions using the software that provides the service.

The Fifth Circuit also suggested in passing that "[n]o human effort is expended by the immutable smart contracts." Op. 31. But "services" do not appear out of thin air; just as someone must write a bank's online banking software, "human effort" is expended in writing the smart contracts that provide the service. As OFAC documented, Tornado Cash expended considerable effort to write and deploy all the contracts that provide the service, held "Trusted Setup Ceremonies" involving hundreds of participants for the immutable contracts, and continuously wrote and implemented new contracts adding additional features. *See* Doc. 68-1 at 37, 48, 59-60; *see also id.* at 178-83 (noting outdated smart contracts). And it is undisputed that the service—including its "mutable" contracts—would not operate without the immutable smart contracts Tornado Cash developed.[1]

The Fifth Circuit acknowledged the "real-world downsides" of its view. Slip Op. 33. Those "downsides" should not be understated: the Fifth Circuit held that OFAC is unable to block some transactions with a service repeatedly used by North Korea to launder stolen money to fund its weapons of mass destruction programs. Nothing about the statute compels that result, and if this Court reaches the issue, it should reject the Fifth Circuit's view.

Sincerely,

*s/ Brad Hinshelwood*
Brad Hinshelwood

cc:  Counsel of Record (via CM/ECF)

---

[1] The Fifth Circuit also erred in holding that the smart contracts do not qualify as "contracts of any nature whatsoever." 31 C.F.R. §§ 510.323, 578.314. The district court here did not opine on that question, and that question would be best addressed by the district court with the benefit of full briefing, if necessary.

3